Michael Kind, Esq. (SBN: 13903)
**KAZEROUNI LAW GROUP, APC**
7854 W. Sahara Avenue
Las Vegas, NV 89117
Phone: (800) 400-6808 x7
FAX: (800) 520-5523
mkind@kazlg.com

David H. Krieger, Esq. (SBN: 9086)
**HAINES & KRIEGER, LLC**
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
dkrieger@hainesandkrieger.com
*Attorneys for Plaintiff Joseph J. Smith*
*individually and on behalf of all others similarly situated*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Joseph J. Smith, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>One Nevada Credit Union,<br><br>Defendant. | Case No.: 2:16-cv-02156-GMN-NJK<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant One Nevada Credit Union ("One Nevada") argues that Plaintiff Joseph J. Smith's ("Smith") Complaint must be dismissed because (1) Smith does not have standing; (2) One Nevada had a permissible purpose to perform credit checks; and (3) Smith does not, and cannot, plead facts that show One Nevada's willful or negligent conduct.

The Complaint, however, specifically alleges that Smith has suffered a concrete harm by way of invasion of privacy, thus providing Smith standing to sue. Compl., ECF No. 1, ¶¶ 33-36. The Complaint also sufficiently alleges that One Nevada did not have a permissible purpose to obtain Smith's credit report. *Id.* at ¶¶ 16-31. Furthermore, Smith pleaded facts that show that One Nevada's conduct was willful and negligent. *Id.* at ¶¶ 32 and 53-54.

Smith's Complaint sufficiently alleges that (1) Smith has standing; (2) One Nevada did not have a permissible purpose to obtain Smith's credit report; and (3) One Nevada's conduct was willful and negligent. Thus, One Nevada's Motion to Dismiss should be denied.

## II. FACTS

In or around October of 2004, Smith obtained an auto loan from One Nevada. Compl., ECF No. 1, ¶ 15. In November of 2008, Smith's account with One Nevada was closed and reported as "Paid, Closed/Never late." *Id.* at ¶ 16. Additionally, Smith opened two unsecured accounts with One Nevada, one in 2002 and the other in 2004. *See* **Exhibit A** at pp. 35-36, 63.[1]

On May 15, 2010, Smith filed bankruptcy in the United States Bankruptcy Court for the District of Nevada in case number 10-18978-led. Compl., ECF No. 1, ¶ 18. One Nevada was included in the bankruptcy. *See* **Exhibit A** at pp. 35-36, 63.

---

[1] See accompanying Request for Judicial Notice.

KAZEROUNI LAW GROUP, APC
7854 W. Sahara Avenue
Las Vegas, NV 89117

1  Smith received a bankruptcy discharge on or about October 27, 2015. Compl., ECF
2  No. 1, ¶ 19. One Nevada did not file any proceedings to declare any debts owed by
3  Smith as "non-dischargeable" pursuant to 11 U.S.C. §523 *et seq*. *Id.* at ¶ 20. One
4  Nevada did, however, file multiple proofs of claim. *See* Proofs of Claim, **Exhibits**
5  **B, C, D, E.**[2] Any debts that Smith owed to One Nevada were discharged through
6  the bankruptcy. *Id.* at ¶¶ 21-22. Any relationship between Smith and One Nevada
7  was extinguished. *Id*.

Smith did not conduct any business, nor incur any additional financial obligations, with One Nevada since the bankruptcy discharge in October of 2015. *Id.* at ¶ 23. One Nevada submitted an unauthorized credit report inquiry to Experian on or about January 15, 2016. *Id.* at ¶ 24. Smith found this unauthorized inquiry while reviewing his Experian credit report dated February 15, 2016. *Id*. Smith did not give One Nevada consent to make such an inquiry of his credit report. *Id.* at ¶ 26. Further, Smith and One Nevada had no relationship and, therefore, One Nevada should not have submitted a credit report inquiry. *Id.* at ¶ 28. One Nevada did not have any legitimate business need for Smith's credit report in January of 2016. *Id.* at ¶ 30.

As a result of One Nevada's conduct, Smith suffered injuries including an invasion of his privacy, and mental and emotional distress. *Id.* at ¶ 33-35. Smith subsequently filed his Complaint against One Nevada for violating the Fair Credit Reporting Act ("FCRA") on September 13, 2016. *See* Compl.

## II.  LEGAL STANDARD

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *E.g.*, *In Re Wal-Mart Wage and Hour Employment Practices*, 490 F. Supp. 2d 1091 (D. Nev. 2007) (*citing Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135

---

[2] See accompanying Request for Judicial Notice.

F.3d 658, 661 (9th Cir. 1998) (citation omitted). There is a strong presumption against dismissing an action for failure to state a claim. *See*, *e.g.*, *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).

The issue is not whether the plaintiff will ultimately prevail, but whether he may offer evidence in support of his claims. *See Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Consequently, the Court may not grant a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hicks v. Small*, 69 F.3d 967, 969 (9th Cir. 1995).

It is improper to dismiss a complaint for failure to state a claim if the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is plausible on its face when the facts in the complaint allow the court to reasonably infer that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

### III. ARGUMENT

Smith pleaded "enough facts to state a claim to relief that is plausible on its face" that (1) Smith has standing to bring this action; (2) One Nevada did not have a permissible purpose to perform credit checks; and (3) One Nevada's conduct was willful and negligent. Thus, One Nevada's Motion to Dismiss should be denied. *Twombly*, 550 U.S. at 547.

### A. SMITH SUFFERED A CONCRETE HARM THAT SATISFIES THE STANDING REQUIREMENT

The Complaint sufficiently alleges that Smith suffered a concrete harm to satisfy the standing requirement. Compl., ECF No. 1, ¶¶ 33-36. Article III requires

KAZEROUNI LAW GROUP, APC
7854 W. Sahara Avenue
Las Vegas, NV 89117

standing to sue in federal court, which includes the requirement that the plaintiff suffered an injury-in-fact that is concrete and particularized. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

One Nevada primarily relies upon *Spokeo* to assert that Smith does not have standing to bring the instant case. *Spokeo* affirmed the long-held contention that a plaintiff must have both a concrete and particularized injury in order to have standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Here, One Nevada asserts that Smith does not have standing because he has not suffered a *concrete* harm.

*Spokeo*, however, did not set a bright-line rule regarding concreteness. Instead, the Supreme Court provided various examples as to how concreteness may, or may not, be met. The Court stated that tangible injuries may be easier to recognize, but that "intangible injuries can nevertheless be concrete." *Id.* at 1549. Further, the Court stated that "both history and the judgment of Congress are instructive" in determining if an intangible harm constitutes injury-in-fact. *Id.* Furthermore,

At the pleading stage, as is here, Smith must "clearly … allege facts demonstrating" he suffered a concrete harm. *Id.* at 1547 (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Analyzing Smith's allegations under *Spokeo* yields a concrete harm as required to have standing in federal court.

1. **ONE NEVADA'S INVASION OF SMITH'S PRIVACY CAUSED A CONCRETE HARM**

Smith suffered an invasion of privacy when One Nevada accessed Smith's highly personal and private credit information. Compl., ECF No. 1, ¶¶ 33-36. Invasion of privacy is an intangible harm and may be more difficult to discern. Therefore, courts should look to (1) Congressional judgment, and (2) whether the alleged harm is closely related to a "harm that has traditionally been regarded as providing a basis for a lawsuit." *Spokeo*, 136 S. Ct. at 1549.

*Spokeo* held that in certain circumstances, "the violation of a procedural right granted by statute can be sufficient … to constitute injury in fact…. [A] plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* As is important here, "Congress's admitted purpose in passing the FCRA was to protect privacy." *Shoots v. iQor Holdings US Inc.*, 2016 U.S. Dist. LEXIS 144559, at *11 (D. Minn. Oct. 18, 2016). Thus, if a plaintiff is claiming an invasion of privacy, which is the harm Congress has identified, the plaintiff need not allege any additional harm to have standing. *Burke v. Fannie Mae*, Civil Actionn No. 3:16cv153-HEH, 2016 U.S. Dist. LEXIS 105103 (E.D. Va. Aug. 9, 2016) (finding that privacy is integral to the FCPA and invading a consumer's privacy by impermissibly pulling a consumer report is sufficient to find standing); *Firneno v. Radner Law Grp., PPLC*, No. 2:13-cv-10135, 2016 U.S. Dist. LEXIS 142907, at *12 (E.D. Mich. Sept. 28, 2016) (finding the plaintiffs' right to privacy is "more substantive than procedural" such that the alleged violation of it is a concrete harm); *Perrill v. Equifax Info. Servs., LLC*, No. A-14-CA-612-SS, 2016 U.S. Dist. LEXIS 117104, at *10-11 (W.D. Tex. Aug. 31, 2016) (agreeing with other courts that "an invasion of privacy within the context of the FCRA constitutes a concrete harm that meets the injury-in-fact requirements." (string cite omitted)).

Here, Smith alleges that One Nevada invaded his privacy by accessing his personal and confidential credit report without his consent. Compl., ECF No. 1, ¶¶ 33-36. One Nevada's invasion of Smith's privacy is the exact harm that Congress was trying to protect against. Since Smith alleges the exact harm that Congress has identified, Smith need not allege any additional harm. Therefore, Smith has standing and One Nevada's Motion to Dismiss should be denied. *See Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-cv-00934-WJ-LF, 2016 U.S. Dist. LEXIS 144741 (D.N.M. Oct. 19, 2016) (finding that "an invasion of privacy can be considered 'concrete' harm—a harm that actually exists—and is sufficient to confer standing on an individual who is suing to protect that interest.")

Additionally, Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Spokeo*, 136 S. Ct. at 1549 (citing *Lujan*, 504 U.S. at 578). In determining whether the injury has been elevated to a "legally cognizable … concrete" harm, the Court should look to whether Smith's harm is closely related to a "harm that has traditionally been regarded as providing a basis for a lawsuit." *Id.*

As noted, the FCRA was enacted to protect privacy rights. *Shoots*, LEXIS 144559 at *11. Claims brought under the FCRA are closely related to the common law tort of invasion of privacy which has been recognized for well over a century. *Matera v. Google, Inc.*, 2016 U.S. Dist. LEXIS 130778, at *27 (N.D. Cal. Sep. 23, 2016) (citing Restat 2d of Torts, §652A-I (noting that the right to privacy was first accepted by an American court in 1905)). The close relationship between the harm suffered under the FCRA and the harm of invasion of privacy supports finding an injury-in-fact. *Spokeo*, 136 S. Ct. at 1549. Thus, Smith has suffered an injury-in-fact by way of an invasion of privacy, and One Nevada's Motion to Dismiss should be denied.

### 2. SMITH'S INCREASED RISK OF IDENTITY THEFT AND FRAUD

One Nevada's argument regarding the "speculativeness" of Smith's increased risk of identity theft and fraud is irrelevant. One Nevada argues that "a mere risk of harm is not sufficient to establish Article III standing." Def.'s Mot., EFC No. 2, p. 6. Smith does not only rely on these increased risks to satisfy the standing requirement. Rather, Smith has standing because he suffered from an invasion of privacy, as discussed above. Smith pleaded that One Nevada's conduct increased his risk to identity theft and fraud as *further* evidence of imminent injury. *See Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) (finding that plaintiff did not have standing because he did "not allege, for example, any invasion of privacy, increased risk of fraud or identity theft, or pecuniary or emotional injury.").

At a minimum, an increased risk of fraud or identity theft may be considered enough to find that a plaintiff has standing under Article III. Since One Nevada's argument regarding the increased risk of identity theft and fraud is insufficient, the Motion to Dismiss should be denied.

### B. ONE NEVADA DID NOT HAVE A PERMISSIBLE PURPOSE TO PULL SMITH'S CREDIT REPORT

One Nevada did not have Smith's permission, nor a permissible purpose, to inquire into Smith's credit report.

#### 1. THE 2002 APPLICATION DID NOT GIVE ONE NEVADA PERMISSION TO OBTAIN SMITH'S CREDIT REPORT

One Nevada relies heavily on the "Nevada Federal Credit Union Membership Application," signed in 2002, (the "2002 Application") that allegedly gave One Nevada permission to obtain Smith's credit information. Def.'s Mot., EFC No. 2, p. 9. Smith did not give One Nevada his permission to inquire into his credit report and the 2002 Application should not be considered, as discussed in the accompanying Objection. Even if the Court is inclined to consider One Nevada's extrinsic evidence, whether the 2002 Application is still binding upon Smith should be a question left to the fact-finder.

The 2002 Application arose at the beginning of Smith's relationship with One Nevada, which was over fourteen years ago. Certainly a decade-old document that was signed at the beginning of a business relationship loses its effectiveness at some point, especially when the relationship has since been terminated and then discharged in bankruptcy. Otherwise, One Nevada (among other companies) would be able to obtain credit information on past customers indefinitely.

As discussed below, a "permissible purpose" ceases after the business relationship terminates. Here, Smith allegedly signed the 2002 Application over a decade ago. Furthermore, Smith has had no business relationship with One Nevada

since 2008, nearly a decade ago. The Application should now be void due to the length of time that has passed and the lack of relationship between Smith and One Nevada. Since there is, at best, a question of fact as to whether the 2002 Application is still binding upon Smith at this stage in the proceedings, One Nevada's Motion to Dismiss should be denied.

### 2. ONE NEVADA DID NOT HAVE A PERMISSIBLE PURPOSE TO OBTAIN SMITH'S CREDIT REPORT

One Nevada did not have a permissible purpose to inquire into Smith's credit report because Smith terminated his relationship with One Nevada long ago. Section 1681b(a)(3) provides a list of permissible purposes to obtain a consumers credit report. One Nevada contends that the FCRA does not distinguish between open and closed accounts, thus allowing a creditor to obtain credit information regardless of the status of the account. Def.'s Mot., EFC No. 2, p. 10. Although a creditor may sometimes obtain a credit report to conduct an account review on a closed account, it is not without limitation. *See Levine v. World Fin. Network Nat'l. Bank*, 437 F.3d 1118, 1122 (11th Cir. 2006) (finding that a claim existed where the creditor obtained a credit report for "account review" on an account that was closed for years with an undisputed zero balance); *see also Godby v. Wells Fargo Bank, N.A.*, 599 F.Supp.2d 934, 942 (holding that a creditor did not have a permissible purpose when it and the consumer did not have an existing relationship and, further, the consumer's debts were discharged in bankruptcy).

Here, Smith's account with One Nevada has been closed and reported as "Paid, Closed/Never late" since November of 2008. Compl., EFC No. 1, ¶16. One Nevada has not disputed the reporting of Smith's closed account. Since the account has been closed for years, and there is no dispute of that fact, any "account review" One Nevada claims to have conducted is a violation of the FCRA. *Levine*, 437 F.3d at 1122.

Furthermore, Smith filed for bankruptcy and received a discharge for that bankruptcy on or about October 27, 2015. *Id.* at ¶¶ 18-19. Any debt owed to One Nevada was discharged through the bankruptcy. *Id.* at ¶¶ 20-21. One Nevada would have been unable to personally collect on any debt since it was discharged through bankruptcy. One Nevada did not have a permissible purpose to obtain Smith's credit report regarding non-collectable debts. *See Godby*, 599 F.Supp.2d at 942.

One Nevada did not have a permissible purpose to obtain Smith's credit report and, therefore, its Motion to Dismiss should be denied.

### C. THE COMPLAINT SUFFICIENTLY ALLEGES THAT ONE NEVADA ACTED WILLFULLY AND NEGLIGENTLY

One Nevada acted willfully and negligently in obtaining Smith's credit report absent a permissible purpose. One Nevada argues that it cannot be held liable for willful noncompliance under the *Safeco* standard for recklessness. Def.'s Mot., EFC No. 2, pp. 11-12. This argument fails because One Nevada *knowingly*, not just recklessly, violated the FCRA's "permissible purpose" requirement.

One Nevada further argues that it cannot be held liable for negligence because Smith does not allege "actual damages." Def.'s Mot., EFC No. 2, pp. 12-13. This argument also fails because Smith did, in fact, allege actual damages within the meaning of the FCRA in the Complaint.

#### 1. ONE NEVADA WILLFULLY FAILED TO COMPLY WITH THE FCRA'S "PERMISSIBLE PURPOSE" REQUIREMENT

One Nevada obtained Smith's credit report when there was no account to review nor a business relationship, thereby willfully violating the FCRA. "[W]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). Further, "assertions that a defendant is aware of the FCRA, but failed to comply with its requirements are sufficient to

support an allegation of willfulness and to avoid dismissal." *Doe v. Sentech Empl. Servs.*, 2016 U.S. Dist. LEXIS 63986, *18 (citing *Singleton v. Domino's Pizza, LLC*, 2012 U.S. Dist. LEXIS 8626, *4 (D. Md. Jan. 25, 2012)).

Here, One Nevada knew about Smith's bankruptcy, evidenced by One Nevada's multiple proofs of claim. *See* **Exhibits B, C, D, E.** As discussed above, One Nevada did not have any permissible purpose to access Smith's credit report, especially after the debt was discharged in bankruptcy. *See Godby*, 599 F.Supp.2d at 942. Based on the facts and law, Smith alleged that, under section 1681n, One Nevada's actions were willful because it "was aware of the FCRA's prohibitions on impermissibly pulling consumers' credit reports." Compl., ECF No. 1, ¶ 32; *see Doe*, LEXIS 63986, at *18.

Since Smith has sufficiently alleged that One Nevada knowingly violated the FCRA, there is no need for the Court to address recklessness. *See Shoots*, LEXIS 144559 at *5 (denying defendant's motion to dismiss, without deciding whether recklessness had been established, because it was determined that the plaintiff had sufficiently alleged a knowing violation of the FCRA). Thus, One Nevada's Motion to Dismiss should be denied.

### 2. SMITH SUFFICIENTLY PLEADED ACTUAL DAMAGES RESULTING FROM ONE NEVADA'S FCRA VIOLATION

In addition to invasion of privacy discussed above, Smith has sufficiently pleaded actual damages, including mental and emotional distress, that resulted from One Nevada's conduct. Section 1681o(a)(1) provides that a consumer may recover "any actual damages sustained" by negligent conduct resulting in a violation of the FCRA. It is well established that "actual damages" may include non-pecuniary harms, such as mental and emotional distress. *FAA v. Cooper*, 132 S. Ct. 1441, 1449 (2012) (finding that "[a] number of courts have construed 'actual damages' … to include compensation for mental and emotional distress"); *Casella v. Equifax Credit Information Servs.*, 56 F.3d 469, 474 (2d Cir. 1995) ("actual damages" may

1  include damages for humiliation and mental distress, even if the absence of out-of-
2  pocket expenses, for violations of the FCRA); *Thompson v. San Antonio Retail*
3  *Merchs. Asso.*, 682 F.2d 509, 513-14 (5th Cir. 1982) (explaining that, "[e]ven when
4  there are no out-of-pocket expenses, humiliation and mental distress do constitute
5  recoverable elements of damage" under the FCRA); *Boris v. Choicepoint Services,*
6  *Inc.*, 249 F.Supp.2d 851, 859 (W.D.Ky. 2003) (citations omitted) ("It is will settled
7  that actual damages under the FCRA are not limited to out-of-pocket expenses and
8  may instead include humiliation and mental distress.").

9        Here, Smith specifically identifies that he has suffered from mental and
10 emotional distress, in addition to the invasion of his privacy. Compl., ECF No. 1, ¶¶
11 34-36. As noted above, Smith's mental and emotional harms are construed as
12 "actual damages" under the FCRA. Since Smith has sufficiently pleaded actual
13 damages resulting from One Nevada's conduct, this Motion to Dismiss should be
14 denied.
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

KAZEROUNI LAW GROUP, APC
7854 W. Sahara Avenue
Las Vegas, NV 89117

## IV. CONCLUSION

Smith has set forth sufficient facts in the Complaint to show that (1) he has standing to sue, (2) One Nevada did not have a permissible purpose to obtain Smith's credit report, and (3) One Nevada's conduct was willful and negligent. Since Smith's FCRA claim has been adequately pleaded, this Court should deny One Nevada's Motion to Dismiss.

DATED this 21st day of November, 2016.

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/ Michael Kind
Michael Kind, Esq.
7854 W. Sahara Avenue
Las Vegas, NV 89117
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY pursuant to Rule 5 of the Federal Rules of Civil Procedure that on November 21, 2016, the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS along with Exhibits A, B, C and D was served via CM/ECF to all parties appearing in this case.

**KAZEROUNI LAW GROUP, APC**

By: /s/ Michael Kind
Michael Kind
7854 W. Sahara Avenue
Las Vegas, NV 89117