**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOSEPH J. SMITH, an individual, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br>   vs.<br>ONE NEVADA CREDIT UNION,<br><br>          Defendant. | Case No.: 2:16-cv-02156-GMN-NJK<br><br>**ORDER** |

This action involves claims brought by Joseph J. Smith ("Plaintiff"), on behalf of himself and others similarly situated, against Defendant One Nevada Credit Union ("Defendant"). Plaintiff alleges that Defendant violated the Fair Credit Reporting Act ("FCRA") by conducting unlawful account reviews, under which Defendant accessed Plaintiff's and the proposed class members' consumer reports without a permissible purpose. (*See* Am. Compl. ¶¶ 24–31, 40–42, ECF No. 43).

Pending before the Court is the Joint Motion for Preliminary Approval of Class Action Settlement, (ECF No. 55), filed by both parties requesting that the Court grant provisional approval of the proposed settlement agreement ("Proposed Settlement") and preliminarily certify Plaintiff's proposed class ("Putative Class") for purposes of settlement. (*See* Joint Mot. for Order, ECF No. 55). For the reasons stated herein, the Motion is **GRANTED**.

I.     <u>**BACKGROUND**</u>

On July 18, 2017, Plaintiff filed his Amended Complaint (the "Complaint") alleging violations of the FCRA, 15 U.S.C. § 1681 *et seq.* on behalf of a Putative Class comprising similarly situated persons, discussed *infra*. (Am. Compl. ¶¶ 39–53, ECF No. 43). Plaintiff alleges that in October of 2004, he obtained a loan from Defendant and as of November 2008,

the account was reported as closed. (*Id.* ¶¶ 15–17). On May 15, 2010, Plaintiff filed for bankruptcy in the United States Bankruptcy Court for the District of Nevada and subsequently received a bankruptcy discharge on October 27, 2015, thus extinguishing any relationship between Plaintiff and Defendant. (*Id.* ¶¶ 18–22).

Upon reviewing his credit report dated February 15, 2016, Plaintiff discovered that on January 15, 2016, Defendant submitted an unauthorized credit inquiry to Experian, a credit reporting agency. (*Id.* ¶ 24). Plaintiff alleges that the credit inquiry, which was undertaken without Plaintiff's consent, constituted an unlawful and willful violation of the FCRA. (*Id.* ¶¶ 25–32). Based upon these allegations, the Complaint alleges one cause of action for violation of the FCRA, for which Plaintiff seeks statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant. (*Id.* ¶¶ 51–53).

On October 6, 2017, the parties reached a settlement through mediation and subsequently submitted the Proposed Settlement now before the Court. (*See* Joint Mot. for Order 5:12–26, ECF No. 55). Under the Proposed Settlement, Defendant agrees to create a common fund in the amount of $600,000, of which each class member to make a claim will receive a pro rata share. (*Id.* 6:15–17). The Putative Class, pursuant to the Proposed Settlement, is defined as:

> All persons whose consumer credit report from any of the three major credit reporting agencies (Transunion, Equifax, and Experian) reflects an unauthorized consumer credit report inquiry by Defendant within the past 5 years. For purposes of settlement only the parties define this class as all One Nevada Credit Union members with closed or unclosed memberships within five years preceding the filing of this action.
>
> Excluded from the Class are all current One Nevada Credit Union employees, officers and directors, and the judge and magistrate presiding over this Action and their respective staff.

(*Id.* 6:6–12; Settlement Agreement ¶ 34, ECF No. 55-5).

The Proposed Settlement further provides for a $5,000 incentive award to be paid to

Plaintiff, as Class Representative, out of the settlement fund before payments to other class members are made. (Joint Mot. for Order 11:18–22). In addition, the Proposed Settlement indicates that Plaintiff's counsel ("Plaintiff's Counsel") will move for attorneys' fees and costs "not to exceed 30% of the amount actually contributed to the Settlement Fund." (*Id.* 11:24–26).

## II. LEGAL STANDARD

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, a class action may not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). At the preliminary stage, the court must first assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the court must determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). If the court preliminarily certifies the class and finds the proposed settlement fair to its members, the court schedules a fairness hearing where it will make a final determination as to the fairness of the class settlement. Third, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

## III. DISCUSSION

The Motion contends that the Court should (1) certify the proposed Putative Class; (2) approve appointment of class counsel and a class representative; (3) grant preliminary approval of the parties' Proposed Settlement; and (4) grant approval of the parties' proposed plan to provide notice to the Putative Class. (*See* Joint Mot. for Order 2:8–3:1). As discussed *infra*, the Court finds that the Putative Class meets the class certification criteria and the Proposed

Settlement meets the threshold standards of fairness, reasonableness, and adequacy. Accordingly, the Court grants class certification for the purposes of settlement and approves the Proposed Settlement on a preliminary basis as fair and adequate.

### A. Conditional Class Certification

Plaintiff seeks conditional certification of a settlement class under Rule 23(a) and (b)(3). (*See* Joint Mot. for Order 13:4–15). To obtain class certification, a plaintiff must satisfy the four prerequisites identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b). *Amchem Prods.*, 521 U.S. at 614. "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). Certification under Rule 23(b)(3) is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods. Fed. R. Civ. P. 23(b)(3). The party seeking class certification bears the burden of affirmatively demonstrating that the class meets Rule 23's requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).

In general, "[b]efore certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (citations omitted). However, when evaluating class certification in the context of a proposed settlement, courts "must pay undiluted, even heightened, attention to class certification requirements" because the court will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold. *Hanlon*, 150 F.3d at 1019; *see also Amchem Prods.*, 521 U.S. at 620. The Court finds that the Putative Class meets the numerosity, commonality, typicality, and adequacy-of-representation requirements under Rule 23(a) as well as the certification

requirements under Rule 23(b).

### i. Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. Generally, courts have held that numerosity is satisfied when the class size exceeds forty members. *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654–56 (C.D. Cal. 2000); *In re Cooper Cos. Inc. Secs. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

In this case, the Putative Class consists of approximately 115,000 persons, representing the number of One Nevada Credit Union members "with closed or unclosed memberships within five years preceding the filing of this action." (Joint Mot. for Order 14:5–6, 6 n.5). Therefore, the Court can safely conclude that the Putative Class is sufficiently numerous such that the joinder of each member would be impracticable.

#### 2. Commonality

"A class has sufficient commonality 'if there are questions of fact and law which are common to the class.'" *Hanlon*, 150 F.3d at 1019 (internal citation omitted). As clarified in *Dukes,* a plaintiff must demonstrate that the class members "have suffered the same injury" and that their claims "depend upon a common contention . . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 U.S. at 350.

Here, the Complaint raises common questions of law and fact including whether each member of the Putative Class' consumer reports were obtained; whether Defendants had a permissible purpose in reviewing the consumer reports; and whether Defendant acted willfully. (Am. Compl. ¶¶ 40, 42, 45, 53). In addition, the Putative Class members each seek the same relief pursuant to the FCRA, 15 U.S.C. § 1681 *et seq.* (*Id.* ¶ 42). The Court is therefore satisfied that, if Plaintiff were to continue to pursue this action, the answers to these questions

would result in class-wide resolution of the claims asserted. Therefore, the Court finds that Plaintiff has satisfied the commonality requirement.

### 3. Typicality

To demonstrate typicality, a plaintiff must show that her claims are typical of that of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.*

In this case, like the Putative Class, Plaintiff obtained a consumer report that reflected an unauthorized credit report inquiry by Defendant within the past five years. (Am. Compl. ¶¶ 24, 40). The Putative Class is defined to encompass persons whose consumer report, obtained from one of the three major credit reporting agencies, indicates an unauthorized credit report inquiry by Defendant within the past five years. (*See* Joint Mot. for Order 6:6–12). Thus, the named Plaintiff's claim and the nature of his alleged losses are sufficiently similar to the Putative Class's claim and alleged losses.

### 4. Adequacy of Representation

"To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). In *Hanlon,* the Ninth Circuit identified two issues for determining the adequacy of representation: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Id.*

In the instant case, the Court is satisfied at this stage that the named Plaintiff will adequately represent the Putative Class. (*See* Smith Decl., ECF No. 55-4). As discussed *infra*, however, upon final fairness review the Court will require more analysis of Plaintiff's efforts and the way in which the Putative Class benefited from the same. The Court further finds that Plaintiff's Counsel have significant experience in consumer protection class action lawsuits and have adequately demonstrated their vigorous advocacy on behalf of the Putative Class' interests in the instant suit. (*See* Kazerounian Decl. ¶¶ 33–61, ECF No. 55-1). Therefore, the Court finds that Rule 23(a) is satisfied at this time.

### ii. Rule 23(b)

Rule 23(b)(3) permits certification where "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" in light of, among other things, "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

This case satisfies Rule 23(b)(3)'s requirements. The common questions of whether Plaintiff and the Putative Class were subjected to Defendant's systematic account reviews predominate over any individual questions. Moreover, adjudicating this matter as a class action is a superior approach to resolving the instant controversy because it avoids the dangers of duplicative litigation and the unfairness of inconsistent judgments.

Accordingly, because the Putative Class satisfies the requirements of Rule 23(a) and 23(b), the Court hereby certifies the proposed class for settlement purposes.

### B. Preliminary Approval of the Proposed Settlement

The Court next considers whether the terms of the Proposed Settlement are fair, reasonable, and adequate towards the absent Putative Class members. *See* Fed. R. Civ. P. 23(e)(2). Courts have long recognized that "settlement class actions present unique due process

concerns for absent class members." *Hanlon*, 150 F.3d at 1026. One inherent risk is that class counsel may collude with the defendants, "tacitly reducing the overall settlement in return for a higher attorney's fee." *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002); *see Evans v. Jeff D.*, 475 U.S. 717, 733 (1986).

To guard against this potential for class action abuse, Rule 23(e) requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *see Staton*, 327 F.3d at 972 n. 22 (noting that the court's role is to police the "inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees"); *Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").

The factors in a court's fairness assessment will naturally vary from case to case, but courts in the Ninth Circuit generally must weigh the *Churchill* factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). However, where, as here, "a settlement agreement is negotiated *prior* to formal class certification, consideration of these eight *Churchill* factors alone is not enough." *Id.*

Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, "such agreements must

withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* (citing *Hanlon*, 150 F.3d at 1026); *accord In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995) (cautioning that courts must be "even more scrupulous than usual in approving settlements where no class has yet been formally certified"); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987) ("[W]hen class certification is deferred, a more careful scrutiny of the fairness of the settlement is required."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (noting that reviewing courts must employ "even more than the usual care"); *see also Manual for Complex Litig.* § 21.612 (4th ed. 2004). Therefore, before approving a precertification settlement, the Court must not only show that it "has explored [the *Churchill*] factors comprehensively, but also that the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth*, 654 F.3d at 947.

Because collusion is unlikely to be evident from the face of the settlement itself, "courts must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* A few such signs include: (1) "when counsel receive a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.*

### i. *Churchill* Factors

With respect to the first two *Churchill* factors, the Court must weigh the "strength of [the plaintiff's] case relative to the risks of continued litigation." *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012). Approval of a class settlement is appropriate in cases in which

"there are significant barriers plaintiffs must overcome in making their case." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Similarly, difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

While Plaintiff's counsel represents that the "claims asserted in the actions have merit," (*see* Kazerounian Decl. ¶ 29, ECF No. 55-1); (Kind Decl. ¶ 34, ECF No. 55-2), Defendant denies any liability and asserts it has meritorious defenses to all claims. (*See* Joint Mot. for Order 4:9–19). In particular, Defendant states that even if "the credit pull was impermissible under the FCRA, it was not the result of willful conduct." (*Id.* 4:10–11). Plaintiff's counsel acknowledges that even if it were able to prove Defendant's conduct was unlawful, Plaintiff faces challenges in "proving that Defendant's actions were willful and proving the damages, if any, sustained by the class members." (*Id.* 18:13–15); *see Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) (noting that "[w]illfulness under the FCRA is generally a question for the jury.") (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). Accordingly, the Court finds that the first two *Churchill* factors weigh in favor of approval.

Regarding the third *Churchill* factor, the Court considers the risk of maintaining class action status through the duration of the case. Under Federal Rule of Civil Procedure 23(c), an "order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Defendant's position is that its support for certification for settlement purposes "shall not be deemed a concession that certification of a litigation class is appropriate," and states that it may challenge class certification in future proceedings should the Court not approve the Proposed Settlement. (*See* Joint Mot. for Order 7:14–19). The Court is satisfied that there are risks associating with pursuing and maintaining the instant class action suit. Therefore, this factor weighs in favor of approval.

Under the fourth *Churchill* factor, the Court considers the amount offered in settlement. In assessing the consideration obtained by class members in a class action settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice v. Civil Service Com'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). In this regard, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Plaintiff's counsel argues that the instant Proposed Settlement "exceeds the results in other similar FCRA impermissible account review cases." (Joint Mot. for Order 21:25–26). For this proposition, Plaintiff cites to *Duncan*, where a court approved an $8,750,000 settlement for a class of approximately 2.2 million members, and *Pastor*, in which the court approved a $1.6 million settlement for a class of 537,000 members. *See Duncan v. JP Morgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 WL 4419472, at *10 (W.D. Tex. May 24, 2016); (*see also* Order Granting Preliminary Approval, *Pastor v. Bank of Am., NA*, No. 3:15-cv-03831-VC (N.D. Cal. July 7, 2017), Ex. 4 to Kazerounian Decl., ECF No. 55-8)). Plaintiff's Counsel also point out that "[o]ther known class action [FCRA] account review cases that have settled have provided non-cash relief." (Joint Mot. for Order 22:2–3).

Here, the Settlement Agreement provides for the creation of a $600,000 common fund, "inclusive of all attorneys' fees, costs, expenses, the Service Award, as well as the costs of Settlement Administration and the Notice Program." (Settlement Agreement ¶ 72). The remainder will be available to a class of potentially 115,000 persons, with each person receiving a pro rata share. (*Id.* ¶ 69; Joint Mot. for Order 14:5–6). At this stage, the Court is satisfied that the amount offered in settlement is within the range of reasonableness.

Next, the Court turns to the extent of discovery completed and the stage of the

proceedings. This action was initially filed on September 13, 2016. (Compl., ECF No. 1). On June 27, 2017, the Court granted in part and denied in part Defendant's motion to dismiss Plaintiff's initial complaint. (*See* Order, ECF No. 39). To date, Plaintiff has served written discovery requests on Defendant, Plaintiff took Defendant's Rule 30(b)(6) deposition as well as depositions of three of Defendant's executives, and Defendant deposed Plaintiff. (Kazerounian Decl. ¶¶ 19, 22–23). Plaintiff filed an Amended Complaint on July 18, 2017, after discovery revealed that the size of the potential class would be much greater than anticipated. (*Id.* ¶ 24); (Am. Compl., ECF No. 48). The parties also engaged in two mediation sessions and ultimately reached a settlement on October 6, 2017. (Id. ¶¶ 20, 26–27). The Court finds that based upon this litigation history, the extent of discovery completed, and the parties' two mediation sessions that "counsel had a good grasp on the merits of their case before settlement talks began," and, therefore, this factor weighs in favor of approval. *Rodriguez*, 563 F.3d at 967.

Under the sixth *Churchill* factor, the Court considers the experience and views of class counsel. The Ninth Circuit has declared that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Id.* (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). Plaintiff's Counsel asserts that the Proposed Settlement is fundamentally fair. (*See, e.g.*, Kazerounian Decl. ¶ 15); (Kind Decl. ¶ 50). With respect to Plaintiff's Counsel's experience, the Court is satisfied that Plaintiff's Counsel have extensive experience including personal involvement in complex class action suits and settlements in consumer rights cases. (*See* Kazerounian Decl. ¶ 33–61).

The final *Churchill factor*, the reaction of the class members to the proposed settlement, is inapplicable at this time. However, upon final fairness review, the Court will consider how this factor impacts the *Churchill* analysis.

### ii. *In re Bluetooth* Factors

As discussed *infra*, the Court finds that Plaintiff's Counsel's proposed award of attorneys' fees is not per se disproportionate. Additionally, the Proposed Settlement does not provide for a "clear sailing" provision by which class counsel is compensated from a fund separate from that available to the Putative Class. Rather, the Proposed Settlement specifies that the award of attorneys' fees, costs, and expenses "shall be payable solely out of the Settlement Fund." (Settlement Agreement ¶ 79). Finally, the settlement mechanism in this case provides that residual funds that "remain in the Settlement Fund within 180 days of the date the Settlement Administrator mails the last Settlement Fund Payment," will be "distributed through a residual *cy pres* program." (*Id.* ¶ 75). Therefore, the third *In re Bluetooth* factor—whether the agreement provides for a reversion of unclaimed awards back to Defendant—is not at issue in this case. Accordingly, the Court is satisfied that the Proposed Settlement does not implicate the signs of collusion identified by the Ninth Circuit in *In re Bluetooth*.

### C. Proposed Award of Attorneys' Fees

The Court recognizes that it need not directly address a proposed allocation of attorneys' fees until the settlement becomes final. However, the parties must, to some degree, justify the proposed award at this stage because any award of fees will directly reduce the amount payable to the Putative Class, and thus bears on the present fairness inquiry. *Martinez v. Realogy Corp.*, No. 3:10-cv-00755-RCJ-VPC, 2013 WL 5883618, at *6 (D. Nev. Oct. 30, 2013).

This is a common fund case. (Joint Mot. for Order 6:15–17). Under regular common fund procedure, the parties settle for the total amount of the common fund and shift the fund to the court's supervision. The plaintiffs' lawyers then apply to the court for a fee award from the fund. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). In setting the amount of common fund fees, the district court has a special duty to protect the interests of the class. On this issue, the class' lawyers occupy a position adversarial to the

interests of their clients. *Staton*, 327 F.3d at 970. As the Ninth Circuit has explained,

> [b]ecause in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. *Rubber-stamp approval, even in the absence of objections, is improper.*

*Id.* (emphasis added); *see also In re Coordinated Pre–trial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 608 (9th Cir. 1997) ("In a common fund case, the judge must look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial benefit after the lawyers are paid. Their interests are not represented in the fee award proceedings by the lawyers seeking fees from the common fund.").

An award of attorneys' fees for creating a common fund may be calculated in one of two ways: (1) a percentage of the funds created; or (2) "the lodestar method, which calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation." *Graulty*, 886 F.2d at 272. The Ninth Circuit has approved either method for determining a reasonable award of fees. *Id.* However, the fee award must always be reasonable under the circumstances. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994).

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 30% of the total settlement value, with 25% considered a benchmark percentage. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). In assessing whether the percentage requested is fair and reasonable, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the

financial burden; and (6) the awards made in similar cases. *Vizcaino*, 290 F.3d at 1047–50. In circumstances where a percentage recovery would be too small or too large in light of the hours worked or other relevant factors, the "benchmark percentage should be adjusted, or replaced by a lodestar calculation." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

Here, Plaintiff's Counsels' request for "up to 30% of the Settlement Fund," (Settlement Agreement ¶ 79), is within the range of reasonableness as determined by the Ninth Circuit and in light of the relevant *Churchill* factors discussed *supra*. However, upon final fairness review, Plaintiff's Counsel must thoroughly examine the *Vizcaino* factors and provide a Lodestar cross-check to assist the Court in determining the reasonableness of the award. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("One way that a court may demonstrate that its use of a particular method or the amount awarded is reasonable is by conducting a cross-check using the other method."). At this preliminary stage, the Court finds that the proposed award of attorneys' fees is within the range of reasonableness and, therefore, the Court conditionally approves this award.

**D. Proposed Incentive Award**

The Proposed Settlement provides for a "service award up to $5,000 for Plaintiff." (Settlement Agreement ¶ 82). The Court finds that this incentive award is in line with awards the Ninth Circuit has approved as reasonable. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947–48; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000). During final fairness review, however, the Court will require analysis of the relevant factors including "the proportion of the payments relative to the settlement amount," "the size of [the] payment," "the actions the plaintiff has taken to protect the interests of the class," "the degree to which the class has benefited from those actions," and "the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. *See Deatrick v. Securitas Sec. Servs. USA, Inc.*, No. 13-cv-05016-JST, 2016 WL 5394016, at *8 (N.D. Cal.

Sept. 27, 2016) (finding that while $5,000 was a presumptively reasonable incentive award in the Ninth Circuit, such an award in that case was not warranted because plaintiff did not offer details regarding the actions the plaintiff had taken to protect the interests of the class). Without satisfactory elaboration on these points, the Court will reduce the incentive award following the final fairness hearing to a reasonable amount. *See, e.g.*, *Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013).

### E. Proposed Class Notice and Administration

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 561 F.3d at 575.

The Court finds that the notice and exclusion forms proposed by Plaintiff meet the requirements of Rule 23(c)(2)(B) and that the proposed mail delivery is also appropriate in these circumstances. (*See* Joint Mot. for Order 6:19–9:16). The Proposed Settlement provides that the claims administrator will provide three forms of notice to the Putative Class including a mailed "double post-card" notice with a detachable claim form," a long-form notice to be posted online, and publication notice. (Settlement Agreement ¶ 18). All of these notices adequately describe the terms of the settlement, inform the class of the proposed award, provide information concerning the time, place, and date of the final approval hearing, and inform absent class members that they may enter an appearance through counsel. (*See* Proposed Notices, Exs. A, B, D to Settlement Agreement, ECF Nos. 55-5, 55-6); *see also Churchill*, 561 F.3d at 575. Therefore, the Court approves the parties' notice mechanism as sufficient.

///

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Joint Motion for an Order, (ECF No. 55), is **GRANTED** as follows:

1. Preliminary class certification is approved;
2. Plaintiff's Counsel are appointed as Class Counsel;
3. Joseph J. Smith is appointed as Class Representative;
4. Kurtzman Carson Consultants, LLC ("KCC") is appointed as claims administrator;
5. The proposed settlement agreement is preliminarily approved as fair and adequate;
6. Within forty (40) days of this Order, KCC shall direct notice to class members online, through direct mail, and through publication ("Notice Deadline");
7. The deadline for class members to submit a claim ("Claims Deadline"), opt-out, or file an objection shall be ninety (90) days after the date of the Notice Deadline.
8. The deadline for Class Counsel to file a motion for attorneys' fees, costs, and an incentive award shall be thirty (30) days before the Claims Deadline.
9. The deadline for Plaintiffs to file a motion for final approval of class action settlement, as well as the Claims Administrator to file a declaration of due diligence and proof of mailing, is February 5, 2019.
10. A final fairness hearing shall take place on March 5, 2019, at 11:00 am in Courtroom 7D before Chief Judge Gloria M. Navarro. The matter of Class Counsels' motion for attorneys' fees, costs, and incentive awards to the Class Representative will be considered at the final fairness hearing.

**DATED** this __16__ day of September, 2018.

_____
Gloria M. Navarro, Chief Judge
UNITED STATES DISTRICT COURT