Abbas Kazerounian, Esq.
*Pro Hac Vice*
Michael Kind, Esq.
Nevada Bar No. 13903
**KAZEROUNI LAW GROUP, APC**
6069 S. Fort Apache Rd., Ste. 100
Las Vegas, NV 89148
Phone: (800) 400-6808
ak@kazlg.com
mkind@kazlg.com

David H. Krieger, Esq.
Nevada Bar No. 9086
**HAINES & KRIEGER, LLC**
8985 S. Eastern Ave., Ste. 350
Henderson, NV 89123
Phone: (702) 880-5554
dkrieger@hainesandkrieger.com
*Class Counsel*

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Joseph J. Smith, *on behalf of himself and all others similarly situated*,<br><br>            Plaintiff,<br>v.<br><br>One Nevada Credit Union,<br><br>            Defendant. | Case No.: 2:16-cv-02156-GMN-NJK<br><br>**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing: March 5, 2019<br>Time: 11:00 am<br>Courtroom: 7D<br><br>Chief Judge Gloria M. Navarro |

    Plaintiff Joseph J. Smith ("Plaintiff") hereby moves this Court pursuant to Rule 23 of the Federal Rules of Civil Procedure for final approval of the Parties'

Class Action Settlement. Defendant One Nevada Credit Union ("Defendant") does not oppose this motion.[1]

This motion is based upon the accompanying Memorandum of Points and Authorities, the declarations and exhibits attached hereto, all pleadings and papers on file in this action and upon such other matters as the Court deems proper.

DATED this 5th day of February 2019.

**KAZEROUNI LAW GROUP, APC**

By:   /s/ Abbas Kazerounian
          Abbas Kazerounian, Esq.
          Michael Kind, Esq.
          6069 South Fort Apache Road, Suite 100
          Las Vegas, NV 89148
          *Class Counsel*

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

---

[1] This Motion is not being filed as a joint motion given that Defendant does not join or adopt all of the Plaintiff's assertions herein.   Nevertheless, Defendant agrees with the general proposition that the parties' settlement should be subject to final approval.

1

## TABLE OF CONTENTS

I. INTRODUCTION ......................................................................................4

II. PROCEDURAL HISTORY ......................................................................5

III. THE FCRA AND THE CLASS ALLEGATIONS ........................................6

IV. THE SETTLEMENT ...............................................................................7

    A.    The Fairness Hearing ................................................................7

    B.    Class Action Settlement Terms ................................................8

        1. Settlement Class Members ................................................8

        2. The Settlement Fund ........................................................8

V. ACTIVITY IN CASE SINCE PRELIMINARY APPROVAL ...........................9

    A.    CAFA Notice ...........................................................................9

    B.    Mail Notice ..............................................................................9

    C.    Publication Notice .................................................................10

    D.    The settlement website and toll free telephone number ........10

    E.    Claims and requests for exclusion ........................................10

        1. No Objections and only four requests for exclusion were received .11

        2. Settlement Checks ..........................................................11

VI. THE SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE AND ADEQUATE, AND FINAL APPROVAL IS APPROPRIATE................................................12

    A.    The Proposed Class Satisfies the Requirements of Rule 23 ................12

        1. Numerosity ....................................................................12

        2. Commonality ..................................................................12

        3. Typicality .......................................................................13

        4. Adequacy of Representation............................................13

        5. The Action meets the requirements of Rule 23(b)(3) ......14

    B.    This Court should Finally Approve the Settlement ................14

        1. Risk, expense, and duration of further litigation ............16

        2. The amount offered in Settlement ..................................17

        3. Class Members were provided with the best notice possible, which afforded them an opportunity to choose whether to participate in the Settlement ..........................................................................20

        4. The extent of discovery completed..................................20

        5. The experience and views of Class Counsel ...................21

        6. The Class Members' reaction to the Settlement ..............22

VII. CONCLUSION ...................................................................................22

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This Settlement was overwhelmingly supported by the class as approximately 14.6% of Class Members filed claims and no objections were made. This settlement provides relief for all the Class Members allegedly harmed by Defendant's credit reviewing practices. The Settlement Agreement ("Agreement" or "Agr."), reached after mediation sessions before Honorable Jackie Glass (Ret.), provides for a considerable financial benefit of $600,000 in a common fund ("Settlement Fund").

Under the Agreement, each Class Member who timely submits an approved claim will receive a pro rata award from the Settlement Fund. Agr., ECF No. 55-5, ¶ 69. As of February 5, 2019, Kurtzman Carson Consultants, LLC ("KCC" or "Claims Administrator") has received 12,764 timely claim forms (8,887 by mail and 3,877 online). Hack Dec., ¶ 11.

KCC provided notice to 87,348 Class Members. *Id.* Each Class Member had the opportunity to receive a pro rata share of the Settlement Fund by submitting a claim online or by mail. Agr., ¶¶ 42-49. The Class Members were informed of the Settlement by direct Mail Notice, Publication Notice, and detailed notice posted on the Settlement Website. *Id.*; Hack Dec., ¶¶ 3-6; *Id.* at Exs. A-B.

After subtracting the requested attorneys' fees and costs, service award to the Class Representatives, and the notice and administrative expenses from the Settlement Fund, each of the 12,764 claims received thus far will be entitled to a settlement check of approximately $21.15. The deadline to submit a claim expired on January 24, 2019. Hack Dec., ¶ 10.

This Settlement also created an incentive for Defendant and other businesses to comply with the FCRA, which benefits the Class Members, consumers in general, and compliant competitive businesses. *See*, *e.g.*, David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their*

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

*Citizens?*, 54 Md. L. Rev. 1552, 1657 (1995) ("[A]llowing a violator to benefit from noncompliance punishes those who have complied by placing them at a competitive disadvantage. This creates a disincentive for compliance.").

The reaction to the Settlement was extremely positive and should be given final approval, especially given the absence of any objections.

## II.  PROCEDURAL HISTORY

On September 13, 2016, Plaintiff filed his complaint. ECF No. 1. On November 4, 2016, Defendant filed its motion to dismiss the complaint. ECF No. 12. Plaintiff responded and Defendant replied. ECF Nos. 14, 17. Defendant filed its motion to stay discovery on December 22, 2016. ECF No. 25. Plaintiff responded and Defendant replied. ECF Nos. 27, 30.

On January 18, 2017, this Court denied Defendant's motion to stay discovery. ECF No. 33. On June 27, 2017, this Court granted in part and denied in part Defendant's motion to dismiss. ECF No. 39. Defendant's motion to dismiss was denied as to Plaintiff's claims for willful violations of the FCRA. *Id.*

The parties engaged in written discovery. Kazerounian Dec., ¶¶ 14-17. Plaintiff took Defendant's Rule 30(b)(6) deposition, including three Defendant executives, on June 30, 2017. *Id.* Defendant took Plaintiff's deposition on July 17, 2017. *Id.* Plaintiff filed his First Amended Complaint on July 18, 2017. ECF No. 43. Defendant filed its Answer on August 1, 2017. ECF No. 48.

Realizing the risks in continuing litigation, the parties agreed to participate in private mediation. Judge Jackie Glass (Ret.), through Advanced Resolution Management, was chosen as mediator by the parties due to her extensive mediation experience. Two mediation sessions were held, on May 19, 2017 and August 25, 2017, as well as continued mediation discussions over the phone and by email. Kazerounian Dec., ¶¶ 21, 25; *see also* O'Donnell Dec., ¶ 6. The Agreement was fully executed by the parties on October 6, 2017. ECF No. 55-5.

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

The parties filed their Joint Motion for Preliminary Approval of Class Action Settlement on December 4, 2017. ECF No. 55. The motion was granted on September 16, 2018. ECF No. 57.

On December 26, 2018, Plaintiff timely filed his Motion for Attorney Fees, Costs and Incentive Award (the "Fee Brief"), ECF No. 58. Defendant did not oppose the motion. *See* ECF No. 59.

Plaintiff now submits this motion for final approval of the Settlement. Pursuant to Rule 23(e). Plaintiff seeks final certification and approval of the proposed class action settlement. Specifically, Plaintiff respectfully requests that the Court enter a Final Judgment and Order of Dismissal with Prejudice similar to the proposed order submitted with this unopposed motion.

### III. THE FCRA AND THE CLASS ALLEGATIONS

The Fair Credit Reporting Act ("FCRA") permits creditors to access credit information from files maintained by credit reporting agencies only for certain specified "permissible purposes." *See* 15 U.S.C. §1681b. One permissible purpose is to conduct a credit inquiry referred to as an "account review" ("to review an account to determine whether the consumer continues to meet the terms of the account" or "involving the . . . review . . . of an account of the consumer"). *See* 15 U.S.C. §1681b(a)(3)(A) & (F)(ii). These inquiries are generally considered "soft inquiries" because the inquiry is not visible to third parties, and does not affect the consumer's credit score. Further, consumers only learn of the soft pull by reviewing their credit reports; they are not routinely notified that a soft inquiry has been made.

Plaintiff alleged that he was a customer of Defendant who was included as a creditor in Plaintiff's bankruptcy. Plaintiff's First Amended Complaint ("FAC"), ECF No. 43, ¶¶ 15-23. Plaintiff further alleged that his account with Defendant was terminated when Defendant accessed his consumer report. *Id.* at ¶ 24. Defendant denies any wrongdoing.

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

As a result of discovery, Plaintiff claims that Plaintiff's credit report was accessed along with all other customers of Defendant in January 2016. Defendant asserted that the batch credit pull was permissible. Plaintiff's position is that the January 2016 batch credit pull lacked any permissible purpose under the FCRA. Kazerounian Dec., ¶ 32. Plaintiff filed his First Amended Complaint on July 18, 2017. ECF No. 43. Defendant filed its Answer on August 1, 2017. ECF No. 48.

For willful violations of the FCRA, successful plaintiffs are entitled to recover statutory damages of $100 to $1,000, attorneys' fees, and, potentially, punitive damages. *See* 15 U.S.C. §1681n. It is difficult to prove actual damages in an account review case because these credit pulls are seen only by the consumer and do not affect consumers' credit scores.

## IV. THE SETTLEMENT

Defendant realized the risks in continuing litigation and the potential for Plaintiff prevailing in this class action. Plaintiff, in turn, also realized the risks of moving forward with litigation. Thus, the parties agreed to participate in mediation. The Honorable Jackie Glass (Ret.) was chosen as mediator by the parties due to her extensive experience and reputation. After two formal mediation sessions, and further settlement discussions, an agreement was reached.

As detailed in the Motion for Preliminary Approval, the Agreement resulted from extensive arm's length negotiations before Judge Glass (Ret.). ECF No. 55; *see also* O'Donnell Dec., ¶ 8. The parties also conducted substantial discovery, including written discovery and depositions. Kazerounian Dec., ¶¶ 14-19.

The time and effort spent on settlement negotiations, as well as the time spent with Judge Glass (Ret.) in the mediation sessions, weigh in favor of final approval of the proposed Settlement, as they strongly indicate there was no collusion.

### A.    The Fairness Hearing

At the Fairness Hearing, the Court will decide whether to finally approve the Settlement and will also consider the Fee Brief requesting $171,490.33 in attorneys'

fees, costs of $8,509.67, and a service award of $5,000 to Plaintiff. ECF No. 58.

### B.    Class Action Settlement Terms

The significant terms of the Settlement are as follows:

#### 1.    Settlement Class Members

The Settlement Class is defined as:

> All persons whose consumer credit report from any of the three major credit reporting agencies (Transunion, Equifax, and Experian) reflects an unauthorized consumer credit report inquiry by Defendant within the past 5 years. For purposes of settlement only the parties define this class as all One Nevada Credit Union members with closed or unclosed memberships within five years preceding the filing of this action.

> Excluded from the Class are all current One Nevada Credit Union employees, officers and directors, and the judge and magistrate presiding over this Action and their respective staff.

Agr., ¶ 34.

#### 2.    The Settlement Fund

The Settlement established a fund of $600,000 paid by Defendant to resolve the claims at issue. *See* Agr., ¶ 32. The fund is to be disbursed pro rata to the Class Members, after deducting the Class Representative's service award, Class Counsels' fees and costs, and class administrative costs. There are currently 12,764 valid claims made, with each claimant to receive approximately $21.15.

Payments from the Settlement Fund are in the form of a pro rata settlement check, which will be mailed to each of the Class Members who made a valid and approved claim. Agr., ¶ 69. KCC will send the Settlement Checks via U.S. mail no later than thirty (30) days after the Judgment has become final ("Effective Date"), as provided under the Agreement. *Id*. Any funds not paid out as the result of un-cashed Settlement checks will be paid out as a *cy pres* award, to a recipient to be agreed to by the parties and approved by the Court. Agr., ¶ 75. No money remaining in the Settlement Fund shall revert to or otherwise be paid to Defendant. *Id*.

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

## V.   ACTIVITY IN CASE SINCE PRELIMINARY APPROVAL

The high participation rate (over 14%), the low number of opt-outs (only four or 0.00457%), and the absence of objections indicate that the terms of the Settlement, as conveyed by the notice process, were understood by the class. *See Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 572 (D.N.J. 2010), *rev'd on other grounds sub nom.*, 681 F.3d 170 (3d Cir. 2012). The Claims Administrator's compliance is described below.

### A.   CAFA Notice

CAFA notice was mailed on December 14, 2017. ECF No. 56.

### B.   Mail Notice

KCC complied with the notice procedure set forth in the Preliminary Approval Order. ECF No. 57. On October 5, 2018, KCC received from Defendant a lists of 89,768 persons identified as the Class List. Hack Dec., ¶ 2. KCC removed duplicates and those records with incomplete mailing addresses. *Id.* There remained 87,348 Class Members with postal addresses that could be mailed notice. *Id*. Of those, 93.35% of the Class Members had a mailing address in Nevada. *Id*.

On October 26, 2018, KCC caused the double sided post-card notice with detachable claim form ("Mail Notice") to be printed and mailed to the 87,348 names and mailing addresses in the Class List. Hack Dec., ¶ 5; *see Id.* at Ex. A.

Since mailing the Mail Notices to the Class Members, KCC has received 1,280 Mail Notices returned by the USPS with forwarding addresses. Hack Dec., ¶ 8. KCC immediately caused Mail Notices to be re-mailed to the forwarding addresses supplied by the USPS. *Id*. KCC also received 9,711 Mail Notices returned by the USPS with undeliverable addresses. Hack Dec., ¶ 9. Through third party locator services and other public source databases, KCC performed address searches for these undeliverable Mail Notices and was able to find updated addresses for 3,168 Class Members. *Id*. KCC promptly re-mailed Mail Notices to the new found addresses. *Id*.

### C.  Publication Notice

To provide notice to the Class Members for whom there are no names or addresses, KCC gave notice of the Settlement by publication in the Las Vegas Review Journal on October 30, 2018. Hack Dec., ¶ 6; *see also Id.* at Ex. B. This notice summarized the Settlement, advised the Class Members on how to file a claim and directed Class Members to the settlement website for further information. *Id.*

### D.  The settlement website and toll free telephone number

On or before October 26, 2018, KCC established a website at www.cufcrasettlement.com, dedicated to providing information about this case to Class Members and to answer frequently asked questions. Hack Dec., ¶ 3. The website URL was set forth in the Mail Notice and Publication Notice. Visitors to the website can download copies of the Long Form Notice, Claim Form and other case-related documents. Visitors were also able submit claims online. *Id.*

On or before October 26, 2018, KCC also established a toll free telephone number for Class Members to obtain information about the Settlement and to request a Claim Form to be sent to them. Hack Dec., ¶ 4.

### E.  Claims and requests for exclusion

Class Members were provided 90 days to make a claim for a Settlement payout. Kazerounian Dec., ¶ 34; Hack Dec., ¶¶ 3-5, 10; *see also* Agr., ¶ 8.

The procedure for submitting a claim was made as easy as possible: a claim form could be submitted online through the Settlement Website or by U.S. Mail. Hack Dec., ¶¶ 3, 5. All that was required was the Class Member's signature and date on the provided claim form. Hack Dec., Ex. A.

KCC has received 12,764 valid claims from Class Members as of February 5, 2019. Hack Dec., ¶ 12. This equates to claims rate of approximately 14.61% from the 87,348 Class Members that were mailed notice.

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

KCC will issue awards in the form of the settlement checks 30 days after the Effective Date to the Class Members who have submitted valid claim forms. Agr., ¶ 69. The checks will expire 90 days after issuance. *Id.* at ¶ 73.

### 1. No Objections and only four requests for exclusion were received

Class Members were permitted to opt-out or to submit an objection. *See* Agr., ¶¶ 50-52. As of February 5, 2019, KCC received only four requests for exclusion and there are no objections to the Settlement. Hack Dec., ¶ 10. The deadline to submit a request for exclusion or to object was January 24, 2019. *Id.*

The lack of objections and few requests for exclusion out of approximately 87,000 Class Members highly supports the adequacy of the proposed Settlement. *In re Diamond Foods, Inc.*, 2014 U.S. Dist. LEXIS 3252, *9 (N.D. Cal. Jan. 10, 2014) ("Also supporting approval is the reaction of class members to the proposed class settlement. After 67,727 notices were sent to potential class members, there have been only 29 requests to opt out of the class and no objection to the settlement or the requested attorney's fees and expenses.").

### 2. Settlement Checks

The net settlement fund available to pay the Class Members is $270,000, which was determined by subtracting the anticipated Class Representative service award of $5,000, Class Counsels' requested fees of $171,490.33, litigation expenses of $8,509.67, and total settlement administrative costs of up to $145,000 from the $600,000 Settlement Fund. *See* Hack Dec., ¶ 13; Fee Brief, ECF No. 58. Based on the net settlement funds and 12,764 valid claims, each valid claimant will receive approximately $21.15 from this Settlement.

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

## VI. THE SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE AND ADEQUATE, AND FINAL APPROVAL IS APPROPRIATE

As the Court found in its Preliminary Approval Order, the class settlement is within the range of reasonableness, and was, preliminarily, appropriate for class certification. Order, ECF No. 57. The relevant factors demonstrate that the Settlement should now be finally approved as fair, reasonable and adequate.

### A. The Proposed Class Satisfies the Requirements of Rule 23

Rules 23(a) and (b) were previously analyzed and applied in the parties' Motion for Preliminary Approval. ECF No. 55; *see also* Order, ECF No. 57, pp. 4-7 ("Accordingly, because the Putative Class satisfies the requirements of Rule 23(a) and 23(b), the Court hereby certifies the proposed class for settlement purposes."). However, Class Counsel will briefly address each factor here.

#### 1. Numerosity

Generally, the numerosity requirement is satisfied when the class is comprised of 40 or more members. *E.g.*, *Bissonette v. Enter. Leasing Co.-West, LLC*, 300 F.R.D. 466, 469 (D. Nev. 2014). In this case, the class includes over 87,000 people. Hack Dec., ¶¶ 2, 5. As a result, this putative class action far exceeds the numerosity threshold under Rule 23.[1]

#### 2. Commonality

The second prerequisite to class certification is the existence of questions of law or fact that are common to the class. Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has made clear that the commonality requirement is to be "construed permissively." *Dukes v. Wal-Mart, Inc.*, 774 F.3d 1214, 1225 (9th Cir. 2007). The existence of shared legal issues" will satisfy the commonality requirement even if there are "divergent factual predicates." *Id.* at 1225. Here, the significant common issues

---

[1] In the Motion for Preliminary Approval, the parties estimated the class size to be approximately 115,000. ECF No. 55. After additional review, reductions were made for accounts that were never actually opened. *See* O'Donnell Dec., ¶ 10.

presented are whether each of the Class Members' credit reports were obtained, whether Defendant had a permissible purpose and whether Defendant acted willfully. The Class Members each seek the same relief under the FCRA. The commonality requirement is therefore satisfied.

### 3. Typicality

The third prerequisite to class certification is that Plaintiffs' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). The test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiff, and whether other class members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp*., 976 F. 2d 497, 508 (9th Cir. 1992). Here, Plaintiff makes the identical FCRA claim on behalf of the class members. Plaintiff's claims are based on Defendant's alleged systematic account review inquiry of all of its members. Because Plaintiff's claims arise from the same course of conduct by Defendant, typicality under Rule 23(a)(3) is satisfied.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that the representative plaintiff will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and that plaintiffs are represented by qualified and competent counsel." *Dukes*, 509 F.3d at 1185. Here, there is no intra-class conflict between Plaintiff and the other class members. Smith Dec., ECF No. 55-4, ¶¶ 4-9. Plaintiff understands the case and why it was brought on his behalf. *Id.* There are no subclasses and every member who files a claim will receive the same amount from the net settlement fund.

Furthermore, Plaintiff is represented by counsel who are qualified in class action litigation and have had extensive experience in consumer protection class action lawsuits, as fully briefed in the Motion for Preliminary Approval, ECF No.,

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

55, pp. 19:3-20:12; *see also* Kazerounian Dec., ECF No. 55-1, ¶¶ 34-61. Thus, Plaintiff and Class Counsel adequately represent the class.

### 5.   The Action meets the requirements of Rule 23(b)(3)

Rule 23(b)(3) states that a class may be certified when "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Here, the common questions regarding Defendant's systematic account review inquiries—whether Defendant had a permissible purpose and whether Defendant acted willfully—predominate. Class adjudication also avoids the potential of inconsistent judgments and duplicative litigation and is therefore superior. This case therefore satisfies Rule 23.

### B.   This Court should Finally Approve the Settlement

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982). "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'"

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D. N.Y. 1985).

The Ninth Circuit has long supported settlements reached by capable opponents in arm's length negotiations. In *Rodriguez v. West Publishing Corp.*, the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1027). The district court must exercise "sound discretion" in approving a settlement. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987); *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.") (citing *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

Application of the relevant factors here confirms that the settlement should be finally approved. The Settlement was reached with the assistance of experienced mediator, Judge Glass (Ret.), which demonstrates a lack of collusion between the parties. *E.g.*, *Gallucci v. Gonzales*, 603 F. App'x 533, 534 (9th Cir. 2015). Based on the facts of this case, Class Counsel, Plaintiff, and Defendant agree that the

Settlement is fair and reasonable. Among other things, the Settlement will avoid costly and time-consuming additional litigation and the need for trial. Kazerounian Dec., ¶¶ 32-33; *see also* O'Donnell Dec.

### 1. Risk, expense, and duration of further litigation

Defendant raised numerous defenses to Plaintiff's claims and putative class claims. *See* Answ., ECF No. 48; *see also* O'Donnell Dec., ¶ 5. Many of these potential defenses are discussed at length in the Motion for Preliminary Approval. ECF No. 55. Defendant contends that its defenses have merit and would defeat the claims of the putative class. However, settlement eliminates any further risk and expense for the parties.

Considering the potential risks and expenses associated with continued prosecution of the lawsuit, the probability of appeals by either side, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is fair, reasonable, and adequate. As the Ninth Circuit has recognized, the very essence of a settlement agreement is compromise: "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. "[I]n exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Id*.

While Class Counsel believe strongly in the merits of the claims brought on behalf of the proposed Class (Motion for Preliminary Approval, ECF No. 55, pp. 21:10-22:9), they also recognize that any case encompasses risks and that settlements of contested cases are preferred in this circuit. *See Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.)*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Officers for Justice*, 688 F.2d 615).

Even if Plaintiff were to prevail on the merits, risks to the class remain. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"), *aff'd*, 440 F.2d

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co*., 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial). "Indeed, courts have previously granted approval to class action settlements precisely because certification of such actions is a risky endeavor." *Bayat v. Bank of the West*, 2015 U.S. Dist. LEXIS 50416, *12 (N.D. Cal. Apr. 15, 2015) (citing *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 791 (N.D. Ill. 2015) (approving class settlement in light of "serious obstacles to class certification")).

As discussed in the Motion for Preliminary Approval, Plaintiff faces challenges if he were to continue to prosecute this case since the relevant law is not settled. *See*, *e.g.*, *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318-1319 (11th Cir. 2009) (affirming dismissal of the plaintiff's claim that it was impermissible to conduct account reviews on closed accounts); *Wilting v Progressive County Mutual Insurance Co*., 227 F.3d 474, 476 (5th Cir. 2000) (rejecting plaintiff's claim that only "existing" accounts could be reviewed); *see also Banga v. Experian Info. Solutions, Inc*., 473 F. App'x 699 (9th Cir. 2012) (affirming district court's holding that it is not objectively unreasonable to read the FCRA as permitting inquiries on closed accounts). Plaintiff faces risks in proving that Defendant had no permissible purpose.

Plaintiff also faces risks in proving that Defendant's actions were willful. *Levine*, 554 F.3d at 1319 ("*Safeco* makes clear that evidence of subjective bad faith cannot support 'a willfulness finding . . . when the company's reading of the statute is objectively reasonable.'"). Avoiding these legal obstacles support the fairness and reasonableness of the settlement.

### 2. The amount offered in Settlement

Under the Settlement, Defendant is required to create a Settlement Fund of $600,000. Agr., ¶ 37. Each valid and approved claim is entitled to a pro rata share of the Settlement Fund, after administrative costs, a service award to the Class Representative, and attorneys' fees and costs are deducted. Agr., ¶ 69. This is an all-

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

in, non-reversionary settlement and all uncashed checks will be distributed to a *cy pres* recipient to be approved by the Court. Agr ¶ 75. As there are 12,764 valid claims so far (Hack Dec., ¶ 12), the individual recovery to the Class Members is approximately $21.15.

It is well established that a proposed settlement may be reasonable and fair where the recovery represents a fraction of the maximum potential recovery. *See, e.g., Nat'l Rural Tele. Coop.*, 221 F.R.D at 527 (it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement that comprised one-sixth of the potential recovery).

Additionally, the benefits of certification are not measured by reference to individual recoveries alone:

> it is firmly established that the benefits of certification are not measured by reference to individual recoveries alone. Not only do class actions offer consumers a means of recovery for modest individual damages, but such actions often produce several salutary by-products, including a therapeutic effect upon those [entities] who indulge in [illegal] practices, aid to legitimate business enterprises by curtailing illegitimate [conduct], and avoidance to the judicial process of the burden of multiple litigation involving identical claims.

*Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 445 (Cal. 2000) (internal quotations omitted).

In *Fraley v. Batman*, the Ninth Circuit approved a class settlement resulting in $15 to each class member who filed a claim, notwithstanding the theoretical availability of $750 in statutory damages. 638 Fed. Appx. 594 (9th Cir. 2016). The

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

Ninth Circuit found the settlement reasonable given the "minimal (if any) harm" suffered by the plaintiffs. The court also noted that potential of awarding the full statutory damages to each of the many class members would raise serious due process concerns. *Id.*

A similar situation exists here. Although the range of recovery for a willful violation of the FCRA is $100 to $1,000, the range of possible recovery must take into account the likelihood of success on the merits. The adequacy of the Settlement should not be evaluated against the theoretically available judgment, but against what Plaintiff and the Class Members could reasonably expect to recover. As previously discussed, there is a significant chance that Plaintiff could not establish that Defendant's actions were willful and he would recover nothing. Plaintiff faces significant litigation risks. Furthermore, Plaintiff and the Settlement Class Members suffered no out-of-pocket harm. The $600,000 represents true value to the class. The relief afforded to the Class Members here exceeds the recovery in almost identical cases *Pastor* and *Duncan*, as discussed in the Motion for Preliminary Approval and Fee Petition.[2] Therefore, the estimated recovery provided by this settlement is in line with, and even exceeds, similar consumer class action settlements.

---

[2] Additionally, this dollar amount is comparable to amounts that have been approved in Telephone Consumer Protection Act cases, where the strict liability statute allows $500-$1,500 in statutory damages per violation. *See Rose v. Bank of Am. Corp.*, 2014 U.S. ($20.00); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 11-md-2261 (S.D. Cal.) Dist. LEXIS 121641 (N.D. Ill. 2014) ($15.00 or $20.00 voucher); *Kazemi v. Payless Shoesource, Inc.*, 09-cv-5142 (N.D. Cal.) ($25.00 voucher); *In re Capital One*, 80 F. Supp. 3d at 787 ($34.60); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ($13.75).

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

### 3. Class Members were provided with the best notice possible, which afforded them an opportunity to choose whether to participate in the Settlement

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F. 3d 1449, 1454 (9th Cir. 1994).

KCC estimates that the Notice program, including direct and indirect notice, reached 92.5% of the Class. Hack Dec., ¶ 7. Therefore, Rule 23(c)(2) is satisfied. *See* Federal Judicial Center's Judges' *Class Action Notice and Claims Process Checklist and Plain Language Guide*, p. 3 (2010) *available at* https://www.fjc.gov/ sites/default/files/2012/NotCheck.pdf (last visited Feb 5, 2019) ("It is reasonable to reach between 70–95%" of the class.); *see also Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, *13-14 (C.D. Cal. Aug. 13, 2008) (final approval of settlement where measurements used to estimate notice reach suggested that 80% of adults learned of the settlement).

Furthermore, the amount of claims indicates the efficacy of the notice. This is a consumer case and consequently subject to lower claims rate than other types of cases. *See*, *e.g.*, *Forcellati v. Hyland's Inc*., 2014 WL 1410264, at *17 (C.D. Cal. Apr. 9, 2014) ("The prevailing rule of thumb with respect to consumer class actions is a claims rate of 3-5 percent.") (brackets omitted). Here, the valid claims rate of over 14% is higher than average. The high claims rate supports that the Class was given sufficient notice, and understood and approved the Settlement.

### 4. The extent of discovery completed

Although many of the facts alleged in the complaint were not in dispute, a significant amount of discovery still took place. In addition to Class Counsel's factual investigations prior to bringing the action, significant written discovery was conducted. Class Counsel also met and conferred with Defendant on several

discovery disputes. Kind Dec., ¶ 18. Class Counsel had even fully briefed and served on Defendant a motion to compel discovery before the underlying discovery disputes were finally resolved. *Id.* Class Counsel also took the deposition of three of Defendant's officers. Class Counsel participated in protracted settlement negotiations, including through two mediation sessions, which ultimately secured a settlement for the benefit of the Class. Kazerounian Dec., ¶¶ 15, 21. Thus, the litigation had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *See In re Warner*, 618 F. Supp. at 745.

Considering that the main disputed issues in this case (whether a permissible purpose existed and whether a class can be certified) are legal questions, the parties have exchanged sufficient information to make an informed decision about settlement. *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998).

### 5. The experience and views of Class Counsel

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's length negotiations conducted by capable, experienced counsel. *See M. Berenson Co.*, 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002); Manual for Complex Lit., Fourth § 30.42.

It is the considered judgment of Class Counsel, experienced in consumer class action litigation, that this settlement is a fair, reasonable and an adequate settlement benefiting the Class. Kazerounian Dec., ¶¶ 28, 33; Kind Dec., ¶¶ 28, 33.

This Settlement was negotiated without collusion by experienced and capable Class Counsel and defense counsel who now recommend its approval. *Id.* Significantly, the Settlement was reached with the assistance of Judge Jackie Glass

(Ret.). Given their experience and expertise, Class Counsel are well-qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the class. Class Counsel have achieved such a result here in this FCRA class action, and unequivocally assert that the proposed Settlement should receive final approval. *Id*.

### 6. The Class Members' reaction to the Settlement

No objections were filed and only four requests for exclusion were made. Hack Dec., ¶ 10; *Id*. at Ex. C. In evaluating the fairness, reasonableness and adequacy of the settlement, the Class Members' reaction supports approval of the settlement. *See Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855, *21 (N.D. Cal. Mar. 31, 2014) (involving only few specific objections, and small percentage of opt-outs); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ("Upon considering the high rate of Class Member claims and the relatively low number of requests for exclusion, the Court finds the reaction of the Class to the Settlement favors approval of the Settlement."); *Stemple v. QC Holdings, Inc.*, No. 12-cv-01997-BAS(WVG), 2016 U.S. Dist. LEXIS 157207, at *7-8 (S.D. Cal. Nov. 7, 2016) (finding the lack of objections supported approval of a TCPA settlement). Thus, the Class Members' response to the Settlement supports a finding that it is fair, adequate and reasonable.

## VII. CONCLUSION

In sum, the parties have reached this Settlement following extensive arm's length negotiations before Hon. Jackie Glass (Ret.). The Settlement is fair and reasonable to the Class Members who were afforded notice that complies with due process. For the foregoing reasons, Plaintiff respectfully requests that this Court:

- Grant final approval of the proposed settlement;
- Order payment from the settlement proceeds in compliance with the Agreement;
- Grant the Motion For Attorneys' Fees, Costs and Incentive Award;

KAZEROUNI LAW GROUP, APC
6069 S. Fort Apache Rd., Suite 100
Las Vegas, NV 89148

- Enter the proposed Final Judgment and Order of Dismissal with Prejudice submitted herewith; and,

- Retain continuing jurisdiction over the implementation, interpretation, administration and consummation of the Settlement.

   DATED this 5th day of February 2019.

                              Respectfully Submitted,

                              **KAZEROUNI LAW GROUP, APC**

                              By:   /s/ Abbas Kazerounian
                              Abbas Kazerounian, Esq.
                              Michael Kind, Esq.
                              6069 South Fort Apache Road, Suite 100
                              Las Vegas, NV 89148

                              **HAINES & KRIEGER, LLC**

                              By:   /s/ David H. Krieger
                              David H. Krieger, Esq.
                              8985 S. Eastern Avenue, Suite 350
                              Henderson, NV 89123
                              *Class Counsel*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY pursuant to Rule 5 of the Nevada Rules of Civil Procedure that on February 5, 2019, the foregoing Motion was filed and served via CM/ECF to all parties appearing in this case.

**KAZEROUNI LAW GROUP, APC**

By:  /s/ Abbas Kazerounian
