UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH J. SMITH,                     )<br>                                              )<br>             Plaintiff,              )<br>   vs.                               )<br>                                              )<br>ONE NEVADA CREDIT UNION,  )<br>                                              )<br>             Defendant.          )<br>_____ ) | Case No.: 2:16-cv-02156-GMN-NJK<br><br>**ORDER** |

Pending before the Court is Plaintiff Joseph J. Smith's ("Plaintiff's") Motion for Distribution to *Cy Pres* Recipient from the Residual Settlement Fund, (ECF No. 69). Defendant did not file a Response. For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion.

## I.   BACKGROUND

On March 29, 2019, the Court approved a Class Action Settlement Agreement (the "Agreement") between Plaintiff and One Nevada Credit Union ("Defendant"). (Order, ECF No. 65). Under the Agreement, Defendant would pay $20.66 to "each of the 13,069 claimants that made a valid claim, on or before 12:00 p.m. on March 5, 2019," out of the settlement fund. (Order 3:21–22, ECF No. 65). The settlement fund issued 12,683 checks to claimants, of which, only 11,355 were cashed. (Hack Decl. ¶ 3, Ex. 1 to Mot. Distribution *Cy Pres* Recipient ("Mot. Distrib."), ECF No. 69). Because of the uncashed checks, the settlement fund has a remaining balance of $11,815.68. (*See* Hack Decl. ¶ 5, Ex. 1 to Mot. Distrib.); (Mot. Distrib. 2:10–12, ECF No. 69). The Agreement provides: "if any funds remain in the Settlement Fund . . . those funds shall be distributed through a residual *cy pres* program" to recipients "agreed upon by Class Counsel and Defendant and approved by the Court." (Settlement Agreement ¶

75, Ex. 1 to Mot. Prelim. Approval Class Action Settlement, ECF No. 55-5).  In the present Motion, Plaintiff proposes a *cy pres* distribution of the residual settlement funds to the National Consumer Law Center ("NCLC"). (Mot. Distrib. 2:13–15).

## II.     LEGAL STANDARD

A district court may consider a *cy pres* distribution of class action settlement funds "only after a valid judgment of damages has been rendered against the defendant" and "for the limited purpose of distributing unclaimed funds." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990).  Overall, the doctrine of *cy pres* "allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011).  A class action settlement fund is considered non-distributable when "the proof of individual claims would be burdensome or distribution of damages costly." *Six Mexican Workers*, 904 F.2d at 1305. Accordingly, a *cy pres* distribution generally takes the form of donations to a third party that will indirectly benefit class members, rather than de minimis direct money payments to class members. *See Lane v. Facebook Inc.*, 696 F.2d 811, 819, 821 (9th Cir. 2012).  Any third-party recipients of a *cy pres* award should be selected based on: (1) "the objectives of the underlying statute(s)," and (2) "the interests of the silent class members." *Nachshin*, 663 F.3d at 1039. Therefore, to properly provide for the "next best" class of beneficiaries, the distribution must bear a "direct and substantial nexus to the interests of absent class members." *See Lane*, 696 F.2d at 821.

## III.     DISCUSSION

As an initial matter, the Court finds that a *cy pres* distribution is appropriate in this circumstance.  A total of $11,815.68 remains in the settlement fund; if these funds were to be distributed to the 11,355 class members, each individual's recovery would be a de minimis amount of just over one dollar. *See In re Easysaver Rewards Litigation*, 906 F.3d 747 (9th Cir.

2018) (finding a second distribution to be de minimis when there were over one million potential class members, but only three million dollars in available funds); (Hack Decl. ¶¶ 3, 5, Ex. 1 to Mot. Distrib.).  As such, the remaining settlement funds are non-distributable, and may be distributed to the "next best" class of beneficiaries through a *cy pres* program, as provided for in the Agreement. (Settlement Agreement ¶ 75, Ex. 1 to Mot. Prelim. Approval Class Action Settlement).

Defendant argues that the NCLC is an appropriate recipient for the *cy pres* distribution because the NCLC's objectives are in line with the nature of the underlying lawsuit, as well as the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and such a distribution would benefit the silent class members.[1] (Mot. Distrib. 6:9–7:21).  The Court agrees.

The underlying complaint in this case was brought pursuant to the FCRA, alleging that Defendant accessed class members' consumer reports without permission, resulting in unlawful account reviews. (*See generally* Compl., ECF No. 1).  The purpose of the FCRA is to ensure that consumer reporting agencies adopt reasonable procedures for credit reporting that are fair and equitable to the consumer, including a respect for confidentially and the consumer's right to privacy. *See* 15 U.S.C. § 1681(a)(4) and (b). *See also Safeco Ins. Co. v. Burr.*, 551 U.S. 47, 62 (2007) (recognizing that § 1681 sets out the FCRA's purpose).  Similarly, the NCLC is a nonprofit organization "dedicated to consumer protection and the promotion of fairness and justice in the marketplace." (Dubois Decl. ¶ 3, Ex. 2 to Mot. Distrib., ECF No. 69).  Therefore, the Court finds that the NCLC was selected as the *cy pres* beneficiary with respect to the objectives of the underlying statute.

Further, Defendant has demonstrated that a distribution to the NCLC will properly provide for the "next best" class of beneficiaries.  First, the NCLC is a national organization; its reach is as widespread as the potential class members, meaning that a distribution to the NCLC

---

[1] Defendant did not dispute the designation of the National Consumer Law Center as the *cy pres* recipient.

will not prevent a class member's potential benefit based on their geographic location. *See Nachshin*, 663 F.3d at 1040 (rejecting the proposed *cy pres* recipient because it did not account for the broad geographic distribution of the class).

Additionally, the NCLC contributes to the field of consumer protection in multiple ways, all of which are likely to benefit potential class members. For example, the NCLC organizes conferences and trainings to educate attorneys and advocates operating in the consumer protection field. *See McKnight v. Uber Technologies, Inc.*, No. 14-cv-05615-JST, 2017 WL 3427985, at *6 (N.D. Cal. Aug. 7, 2017) (approving the NCLC as a *cy pres* recipient because it "advocates on behalf of consumers, providing legal services and aid"); (Dubois Decl. ¶ 5, Ex. 2 to Mot. Distrib.).

Finally, the NCLC publishes treatises and policy statements that provide practical advice and analysis on a wide variety of consumer protection topics, including fair credit reporting. (*Id.* ¶ 6–7). Thus, the NCLC plays a role in public education surrounding consumer issues by sharing its research and insights with the media and other major news organizations. *See Lane* 696 F.3d at 822 (approving a *cy pres* recipient that educated consumers in field of the underlying lawsuit); (Dubois Decl. ¶ 8, Ex. 2 to Mot. Distrib.). Therefore, a *cy pres* distribution to the NCLC bears a "direct and substantial nexus to the interests of absent class members." *Lane* 696 F.3d at 821. *See also, e.g.*, *Feist v. Petco Animal Supplies, Inc.*, No. 3:16-cv-01369-H-MSB, 2018 WL 6040801, at *6 (S.D. Cal. Nov. 16, 2018) (approving the NCLC as a *cy pres* recipient in a class action arising from FCRA violations because there is a sufficient nexus between the recipient and the class members). Accordingly, the Court grants Plaintiff's Motion for Distribution to *Cy Pres* Recipient from the Residual Settlement Fund.

//
//
//

### IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Distribution to *Cy Pres* Recipient from the Residual Settlement Fund, (ECF No. 69), is **GRANTED**.

**IT IS FURTHER ORDERED** that the claims administrator of the Settlement Fund shall distribute the residual funds to National Consumer Law Center, after deducting any necessary and reasonable administration costs.

**DATED** this  30   day of December, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court